# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSEPH M. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.:  K24A-12-002 NEP |
| | ) | |
| USAA GENERAL INDEMNITY | ) | |
| COMPANY, WALLACE E. | ) | |
| PRESSLEY III, and DELAWARE | ) | |
| DEPARTMENT OF INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  August 1, 2025
Decided:  September 9, 2025

## MEMORANDUM OPINION AND ORDER

***Upon Defendant Wallace E. Pressley III's Motion To Dismiss***
**DENIED**

***Upon Defendant Wallace E. Pressley III's Motion To Strike***
**DENIED**

***Upon Defendant USAA General Indemnity Company's Motion To Dismiss***
**GRANTED**

Joseph M. Walls, Smyrna, Delaware, *Pro Se Plaintiff*.

Shae Chasanov, Esq., Tybout, Redfearn & Pell, Wilmington, Delaware, *Attorney for Defendant Wallace E. Pressley III*.

Stephen F. Dryden, Esq., and Brandon R. Herling, Esq. (argued), Weber Gallagher Simpson Stapleton Fires & Newby, LLP, New Castle, Delaware, *Attorneys for Defendant USAA General Indemnity Company*.

**Primos, J.**

Defendants USAA General Indemnity Company ("USAA") and Wallace E. Pressley III ("Pressley") move to dismiss this *de novo* appeal from a panel of arbitrators appointed by the Delaware Department of Insurance (the "Department"). Plaintiff has added Pressley as a party to the appeal, as well as various claims that were not addressed in the arbitration. The Court finds that, although Plaintiff failed to appropriately serve either USAA or Pressley, this defect was the result of excusable neglect. Because this is the sole ground on which Pressley urges dismissal, Pressley's motion to dismiss is **DENIED.** In the alternative, Pressley asks this Court to strike certain allegations from Plaintiff's amended complaint, but as these allegations are relevant to Plaintiff's claims and not unduly prejudicial, Pressley's motion to strike is **DENIED.** Finally, because Plaintiff's claims against USAA are meritless, USAA's motion to dismiss is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 11, 2024, an arbitration panel appointed by the Insurance Commissioner pursuant to 18 *Del. C.* § 331 affirmed USAA's denial of Plaintiff's water damage claim under his homeowner's insurance policy. On December 4, 2024, Plaintiff filed a Notice of Appeal (the "Complaint")[2] with this Court.[3] The Complaint both appealed the panel's decision and sought to recover from Plaintiff's neighbor, Pressley, for allegedly causing the water damage.[4] Through the Sheriff, Plaintiff served a citation on appeal on the Department.[5] The praecipe Plaintiff

---

[1] Citations in the form of "D.I. ___" refer to docket items.

[2] The Court refers to the Notice of Appeal as a complaint because it includes claims and parties not considered below, and therefore bears more resemblance to a civil complaint than to a typical notice of appeal.

[3] D.I. 1.

[4] *Id.*

[5] D.I. 3, D.I. 13. Service was initially returned *non est*, D.I. 14, but this issue was later resolved. D.I. 17.

attached to the Complaint, however, called for something else: "Please issue Citation on Appeal, complaint and summons upon the defendants above, at: Delaware Department of Insurance, Arbitration, 1351 West North Street, Suite 101, Dover, DE 19904."[6]

The Department filed a letter of nonparticipation, indicating that it did not intend to take a position in this appeal and that it would not provide a record pursuant to the citation on appeal because it was irrelevant to the Superior Court trial *de novo* provided for by statute.[7] On January 8, 2025, Pressley filed a motion to dismiss Plaintiff's Complaint.[8] In response, Plaintiff moved to amend the Complaint,[9] and Pressley did not oppose that motion.[10]

On February 21, 2025, Plaintiff moved for default judgment against USAA.[11] USAA entered an appearance through counsel[12] and responded to the motion.[13] On March 21, 2025, the Court heard argument on, and denied, Plaintiff's motion.[14]

On May 12, 2025, Plaintiff filed what he entitled an "Amended De Novo Appeal" (hereinafter the "Amended Complaint").[15] In addition to expanding upon his argument that USAA had wrongly denied coverage, Plaintiff asserted a new claim that USAA had violated Title 18, Chapter 23, of the Delaware Code, the Unfair Trade Practices Act.[16] Plaintiff also added further claims against Pressley: "assault, intentional infliction of emotional distress, trespass, continuing trespass, defamation,

---

[6] D.I. 3.
[7] D.I. 13.
[8] D.I. 18.
[9] D.I. 20.
[10] D.I. 26.
[11] D.I. 27.
[12] D.I. 30.
[13] D.I. 31.
[14] D.I. 32–33.
[15] D.I. 48.
[16] *Id.* at 8–10.

3

libel and slander, and nuisance and private nuisance."[17] The attached certificate of service indicated that the Amended Complaint was "served . . . by email."[18]

Pressley and USAA both moved to dismiss the Amended Complaint,[19] and Plaintiff responded to both motions.[20] The Court heard oral argument on August 1, 2025. At oral argument, Plaintiff withdrew his claim that Pressley had defamed him. The Court reserved judgment on Defendants' motions pending this written decision.[21]

## II. ANALYSIS

### A. Plaintiff's failure to serve Pressley and USAA was the result of excusable neglect.

In seeking dismissal, both Defendants cite insufficiency of process and insufficiency of service of process pursuant to Superior Court Civil Rules 12(b)(4) and 12(b)(5). There is no question that Plaintiff failed to properly serve process on Pressley and USAA. Under Superior Court Civil Rule 3(c),

> [w]hen an appeal de novo is permitted by law, an action is commenced in the Superior Court by the appellant filing with the Prothonotary a praecipe within the time prescribed by statute for the filing of an appeal . . . . When the appellant is the party having the duty of filing the complaint or other first pleading on appeal, the appellant shall file such pleading with praecipe.

The Supreme Court has held, in *Purcell v. State Farm Fire and Casualty Co.*, that Rule 3(c) governs appeals from insurance arbitration panel decisions.[22] Consistent with that rule, Plaintiff, as the appellant, was obligated to file both the praecipe and the Complaint within the 90 days prescribed for such appeals by

---

[17] *Id.* at 4; *see also id.* at 13–28.
[18] *Id.* at 31.
[19] D.I. 54–55.
[20] D.I. 58–59.
[21] D.I. 70.
[22] *See generally* 192 A.3d 556, 2018 WL 3814592 (Del. Aug. 9, 2018) (ORDER).

statute.[23]  Superior Court Civil Rule 4(j) requires that a complaint and a summons be served upon each defendant within 120 days after the filing of the complaint. Here, Plaintiff did not do so.  Nor did Plaintiff properly serve the Amended Complaint.[24]  Such failure would ordinarily be fatal to Plaintiff's action, because "[p]roper service of process is a jurisdictional requirement[.]"[25]

Delaware law, though, recognizes a narrow basis on which a plaintiff may avoid dismissal on these grounds.  The Court has discretion[26] to grant Plaintiff additional time to serve Defendants if he shows good cause—i.e., that his failure to timely serve the defendants was the result of excusable neglect.[27]  In other words, "good cause" requires a "demonstration of good faith on the part of the party seeking an enlargement [of the time to serve] and some reasonable basis for noncompliance," such as "neglect which might have been the act of a reasonably prudent person under the circumstances."[28]

In evaluating whether Plaintiff's neglect is excusable, the Court considers his status as a *pro se* litigant to be one of the attendant "circumstances" worthy of weight in its analysis.  It is certainly true that "[t]here is no different set of rules for *pro se* litigants, and the Court 'should not sacrifice the orderly and efficient administration of justice to accommodate' them."[29]  However, "Delaware courts afford *pro se*

[23] 11 *Del. C.* § 331(d).

[24] Because the Amended Complaint differed substantively from the original Complaint, Plaintiff was obligated to serve it upon Defendants.  *Anderson v. General Motors, LLC*, 2024 WL 3880017, at *3 (Del. Super. Aug. 20, 2024).  Service of the Amended Complaint via email did not conform to the requirements of Superior Court Civil Rule 4.

[25] *Agyeman v. Epic-Africa Found.*, 2024 WL 2375109, at *2 (Del. Super. May 22, 2024), *aff'd*, -- a.3d --, 2025 WL 211522 (Del. Jan. 16, 2025) (TABLE) (quoting *JulSaint v. Ramos*, 2017 WL 4457211, at *2 (Del. Super. Oct. 4, 2017)).

[26] *Sidberry v. GEICO Advantage Ins. Co.*, 2019 WL 6318176, at *3 (Del. Super. Nov. 20, 2019) (citing *Doe v. Cath. Diocese of Wilmington, Inc.*, 2010 WL 2106181, at *2 (Del. Super. May 26, 2010)).

[27] *Dolan v. Williams*, 707 A.2d 34, 36 (Del. 1988).

[28] *Id.* (citation and quotation omitted).

[29] *U.S. Bank Nat'l Ass'n v. Stevens*, 2025 WL 1139329, at *10 (Del. Super. Apr. 17, 2025) (quoting

litigants a degree of leniency" for formal deficiencies.[30] The question is, thus, whether Plaintiff, as a lay person exercising reasonable prudence, should have discovered and conformed to the requirements of Rule 3(c) and Rule 4 under the unique facts of this case. In this light, the Court concludes that any neglect Plaintiff exhibited in this case was excusable. Several considerations counsel this result.

First, neither Defendant's motion cites to Rule 3(c), nor did counsel for either Defendant reference either that rule or *Purcell* as controlling at oral argument.[31] This case has been marked by substantial confusion by all parties about the nature of Plaintiff's action. A review of Delaware case law shows that *de novo* appeals to this Court are relatively rare and the rules around them seldom litigated. Indeed, the rules are in some ways less clear—or at least less developed—than those applying to *de novo* appeals to the Court of Common Pleas.[32] Given these facts, the Court is hesitant to find that Plaintiff, acting *pro se*, should have navigated the Court's rules more adroitly than either counsel opposing him apparently did.[33] Further, the overall

---

*Draper Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001) (per curiam)). Nor does the Court weigh the apparent lack of prejudice to Defendants, who are presently aware of the litigation, in its analysis. Lack of prejudice to a defendant does not obviate the requirement of service or substitute for good cause. *Ballard v. Takeda Pharm. Am., Inc.*, 2017 WL 3396488, at *4 (Del. Super. Aug. 7, 2017), *aff'd*, 184 A.3d 1291, 2018 WL 1905138 (Del. Apr. 23, 2018) (TABLE) (citing *DeSantis v. Chilkotowsky*, 877 A.2d 52, 2005 WL 1653640, at *2 (Del. June 27, 2005) (ORDER) ("[T]here is nothing in [Rule 4(j)] that excuses noncompliance when it is alleged that a defendant is not prejudiced by the failure of service.")).

[30] *City of Wilmington v. Flamer*, 2013 WL 4829585, at *4 (Del. Super. May 22, 2013) (quoting *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008)).

[31] *See* Def. USAA Gen. Indemnity Co.'s Mot. to Dismiss (hereinafter "USAA Mot. to Dismiss") 8–10 (D.I. 54); Def. Wallace E. Pressley III's Mot. to Dismiss and Strike Pl.'s Compl. (hereinafter "Pressley Mot. to Dismiss) 3–4 (D.I. 55).

[32] Most relevant to this case, the Court of Common Pleas has adopted a rule that permits the joinder of claims and parties in *de novo* appeals even though those parties and claims were not heard below. *See August v. Lin*, 2019 WL 3976040, at *1 (Del. Super. Aug. 20, 2019), *aff'd* sub nom., *August v. Jie Lin*, 228 A.3d 408, 2020 WL 1909198 (Del. Apr. 17, 2020) (TABLE) (noting that the "mirror image rule" has been abolished by Court of Common Pleas Civil Rule 72.3(f)). Neither Defendant has asserted that the historic mirror image rule applies to *de novo* appeals to this Court or that this appeal is defective because it violates that rule.

[33] *Cf. Chandler v. Bayhealth*, 2024 WL 4977010, at *12 (Del. Super. Dec. 4, 2024) (holding that

complexity of the procedure goes some way toward excusing Plaintiff's misapprehension of any particular part of that procedure. [34]

Second, Plaintiff's praecipe (filed with the Complaint) asked for the Court to issue a summons, but no form summons was filed with the Complaint. Although Prothonotary staff do not give legal advice, this discrepancy arguably should have prompted Court staff to provide Plaintiff with a blank summons to complete or—better yet—clarify whether Plaintiff intended to file under Rule 3(a) (for civil claims generally), Rule 3(c) (for trials *de novo*), or Rule 72 (which governs appeals on the record). Instead, by serving the Department of Insurance with a citation on appeal, the Court simply treated this as a typical Rule 72 case—even after the Department informed the Court that it was not and that the record requested by such citation was irrelevant to the statutorily-prescribed trial *de novo*.[35] Although plaintiffs cannot rely on Court staff to correct their mistakes, and Court errors do not excuse a failure to act reasonably in pursuing service,[36] the fact that Plaintiff's failure to serve a summons alongside the first Complaint may be partially attributable to staff

---

bankruptcy trustee's view that plaintiff was not obligated to disclose pending civil claim, even if wrong, "ma[de] [her] omission more excusable, as she [could] scarcely be held to a higher standard than a professional in the field.").

[34] *Cf. Fossett v. Dalco Const. Co.*, 858 A.2d 960, 2004 WL 1965141, at *2 (Del. Aug. 20, 2004) (ORDER) (directing the Justice of the Peace Court and Court of Common Pleas to take various actions to avoid confusion concerning appeals *de novo*); *Purcell*, 2018 WL 3814592, at *3 (describing confusion about service in a *de novo* insurance appeal as a "Gordian knot.").

[35] Letter from Jessica M. Willey dated December 23, 2024 (D.I. 15) ("[A]n appeal of a homeowners' arbitration award arbitration award entitles a party to a trial *de novo* in the Superior Court, as opposed to an appeal on the record. *See* 18 *Del. C.* § 331(d). On the face of his Complaint on appeal to this Court, the Plaintiff seeks to pursue his claims against Defendants USAA General Indemnity Company and Mr. Pressley in connection with a loss suffered at his property. *Therefore, unless directed to do so by the Court, the Department does not intend to file a record of the below proceedings* or to participate further in this matter.") (emphasis supplied).

[36] *See Agyeman*, 2024 WL 2375109, at *3–5 (Plaintiff claimed that the delay in service was the fault of the Prothonotary's office but made no attempt to follow up on service prior to the 120-day deadline).

oversight supports a finding of excusable neglect.[37]

Finally, it should be noted that any dismissal for insufficient service of process is without prejudice.[38]  With regard to USAA, such dismissal might bar Plaintiff from refiling, because 18 *Del. C.* § 331(d) only permits a trial *de novo* in this Court if the appellant files a notice of appeal within 90 days of the arbitration decision.[39]  However, because Plaintiff's claims against Pressley could not have been raised below, the 90-day statutory deadline for arbitration appeals would not apply.  Plaintiff would thus be free to refile his claims against Pressley in a separate civil complaint.[40]  Dismissing the claims against Pressley on purely formalist grounds would thus serve little purpose.  Doing so would also undermine the efficiency of the judicial process.

**B. Pressley's motion to strike is meritless, because the allegations Pressley seeks to strike are relevant to Plaintiff's claims and not unduly prejudicial.**

Pressley objects to various allegations in Plaintiff's Amended Complaint on the grounds that they are "immaterial, impertinent, scandalous, and otherwise unduly

---

[37] *Cf. Lynam v. Blue Diamond LLC Motorcross*, 2015 WL 5968654, at *4 (Del. Super. Oct. 12, 2015) (excusing late service where the Prothonotary overlooked the plaintiff's alias praecipes filings and the plaintiffs "reacted in a timely and diligent manner" upon learning of the error); *Painter v. Progressive Northern Ins. Co.*, 2007 WL 3360037, at *2–3 (Del. Super. Aug. 20, 2007) ("Plaintiffs contest Defendant['s] . . . Motion by stating that administrative problems in the Prothonotary's Office caused the failure to serve the Summons and Complaint here.  Plaintiffs contend that their counsel contacted the Prothonotary's Office several times in order to ensure service.  By the time of the . . . hearing, however, the Prothonotary and Sheriff's Office had still not cashed checks . . . .  Because the Court finds that the delay here was caused by excusable neglect, as it was the Court's error, it cannot hold Plaintiffs responsible.").

[38] Super. Ct. Civ. R. 4(j); *Agyeman*, 2024 WL 2375109, at *2 (citing *JulSaint*, 2017 WL 4457211, at *2).

[39] As the Court dismisses Plaintiff's Amended Complaint against USAA on other grounds, it need not express any opinion as to whether, under the facts of this case, Plaintiff can avoid the waiver of his appeal rights specified by 18 *Del. C.* § 331 or whether his claims against USAA could have been filed outside the context of an appeal *de novo*.

[40] The alleged facts giving rise to Plaintiff's claims against Pressley span from December of 2023 through March of 2024.  Am. Compl. 13–28 (D.I. 48).  Thus, it appears that none of those claims would be barred by the applicable statute of limitations.

prejudicial."[41] Pressley seeks to strike this material, citing Superior Court Civil Rule 12(f), which permits this Court to "order stricken from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." This Court, however, disfavors motions to strike[42]—such motions "are granted sparingly, and then only if clearly warranted, with doubt being resolved in favor of the pleading."[43] "The test employed in determining whether to strike is: 1) whether the challenged averments are relevant to an issue in the case and 2) whether they are unduly prejudicial."[44] Pressley's motion fails on both fronts.

Without going into exhaustive detail about Plaintiff's factual assertions in the Amended Complaint, they are material to his tort claims. The Court will find allegations immaterial only where the movant demonstrates "clearly and without doubt that the matter . . . has no bearing on the litigation."[45] The Amended Complaint tracks the deteriorating relationship between the two men, which shows Pressley's alleged motive both for failing to fix the runoff issue and for the alleged assault and other tort claims. Delaware courts have found challenged averments material where they "provide context for the dispute"[46] and where they give insight into the motivations behind behavior at issue in the action.[47] It is this sort of allegation that Pressley asks this Court to strike, and his motion is therefore misplaced. Further, some of the allegations that Plaintiff seeks to strike are intrinsic

---

[41] Pressley Mot. to Dismiss 6 & n.24 (D.I. 55).

[42] *Heisenberg Principals Fund IV, LLC v. Bellrock Intel., Inc.*, 2018 WL 3460433, at *1 (Del. Super. July 17, 2018) (citing *Vannicola v. City of Newark*, 2010 WL 5825345, at *8 (Del. Super. Dec. 21, 2010)).

[43] *Id.* (quoting *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 660 (Del. Super. 1985)).

[44] *O'Neill v. AFS Holdings, LLC*, 2014 WL 626031, at *6 (Del. Super. Jan. 15, 2014) (quoting *Shaffer v. Davis*, 1990 WL 81892, at *4 (Del. Super. June 12, 1990)).

[45] *Fontana v. CSX Transp., Inc.*, 330 A.3d 967, 975 (Del. Super. 2025) (quoting *Sun Life Assurance Co. of Canada v. Wilmington Tr. Nat'l Ass'n*, 2018 WL 3805740, at *1 (Del. Super. Aug. 9, 2018)).

[46] *Byborg Enters. S.A. v. Vertex, Inc.*, 2025 WL 1911338, at *2 (Del. Super. July 11, 2025).

[47] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *19 (Del. Ch. Sept. 10, 2015).

to Plaintiff's claims, as they describe the actions he believes give rise to tort liability (such as the details of the alleged assault). These details are clearly relevant to those claims, as without them the claims would not be well pled. Indeed, Plaintiff's claims would be susceptible to dismissal under Rule 12(b)(6) if his Amended Complaint included only bare conclusions of liability without specific supporting facts.[48] In other words, accepting Pressley's argument would render Rules 12(b)(6) and 12(f) a catch-22.

In fairness, Pressley strenuously denies the factual allegations in Plaintiff's Amended Complaint and asserts that they are "entirely concocted."[49] From that perspective, Pressley understandably finds Plaintiff's claims "scandalous" in a colloquial sense. On a motion to strike, though, "the Court construes all facts in favor of the nonmoving party."[50] The Court will not, at this stage, determine whether or not Plaintiff's allegations are true. Nor will the Court strike the allegations merely because they are offensive to the defendant. If that were the rule, all civil defendants would potentially have immunity from suit, because they could simply move to strike the claims against them as scandalous rather than defending against them before a judge or jury. Clearly, this is not the purpose of Rule 12(f). The Court does not strike material whenever it casts a derogatory light on a party, but only where it does so improperly.[51]

---

[48] *Wellgistics, LLC v. Welgo*, 2024 WL 113967, at *4 (Del. Super. Jan. 9, 2024) (citing *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan. 13, 2021)).
[49] Pressley Mot. to Dismiss 6 (D.I. 55).
[50] *Columbus Life Ins. Co. v. Wilmington Tr. Co.*, 2021 WL 537117, at *11 (Del. Super. Feb. 15, 2021) (citation omitted).
[51] *O'Neill*, 2014 WL 626031, at *6 (quoting *Quereguan v. New Castle Cnty.*, 2010 WL 2573856, at *5 (Del. Ch. June 18, 2010)).

## C. Plaintiff's Amended Complaint fails to state any claim on which relief can be granted against USAA.

### 1. Standard of review

USAA contends that Plaintiff's Amended Complaint should be dismissed not just because Plaintiff failed to properly serve the Defendants but also because, as to USAA, it fails to state a claim on which relief can be granted.[52] Upon such motion,

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[53]

Even applying this generous standard, Plaintiff's claims against USAA cannot survive. Accepting Plaintiff's characterization of events as true, and drawing all reasonable inferences in his favor, his insurance policy did not cover the damage at issue in this case. Further, as he now concedes, Plaintiff's claim under the Unfair Trade Practices Act, 11 *Del. C.* § 2304(16), fails as a matter of law because that statute does not provide a private right of action. This failing is not cured by Plaintiff's belated attempt to reframe his claim as one that USAA breached a contract with him or violated its common law duty of good faith and fair dealing. In light of these conclusions, Plaintiff cannot prove any set of facts that would entitle him to recover from USAA on the theories propounded in his Amended Complaint.

### 2. Plaintiff's claim of coverage is unsupported by the unambiguous language of the insurance policy.

Plaintiff alleges that his property was damaged when, due to a damaged gutter and downspout, rainwater running off Pressley's roof pooled in Pressley's yard and then poured into Plaintiff's basement.[54] USAA's motion does not dispute this

---

[52] USAA Mot. to Dismiss 3–7 (D.I. 54).
[53] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations and quotations omitted).
[54] Am. Compl. 4–6, 14–15 (D.I. 48).

account of events but contends that Plaintiff's insurance policy does not cover this sort of damage.

In disposing of USAA's motion to dismiss, the Court will consider the insurance policy because it is integral to Plaintiff's Amended Complaint and incorporated therein by reference.[55] The policy provides that USAA "do[es] not insure . . . water damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source."[56] It goes on to define "water damage" as "damage caused by or consisting of," *inter alia*, "[f]lood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind."[57] By operation of an endorsement specific to Delaware, the policy does not cover losses from "weather conditions, which includes but is not limited to . . . rain" if such conditions "contribute in any way with a cause or event excluded" by the section containing the "water damage" exclusion.[58] Separately, Plaintiff purchased an endorsement titled "water backup or sump pump overflow," which provides coverage for loss caused by "[w]ater or water-borne material which flows into the plumbing system . . . through sewers or drains located off the 'described location'" and "water which overflows from a sump pump or sump well with a sump pump designed to drain subsurface water from the foundation[.]"[59] Absent the endorsement, such loss would be excluded as "water damage."[60]

When an insurance policy is ambiguous, Delaware courts construe the

---

[55] *See In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004); *Vanderbilt Income and Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).
[56] USAA Mot. to Dismiss Ex. A, at 23–24 (D.I. 54).
[57] *Id.* at 24.
[58] *Id.* at 25, 43.
[59] *Id.* at 55.
[60] *Id.* at 24.

language in favor of the insured, rather than in favor of the insurer that drafted it.[61] "However, where the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning."[62] "Whether a contract is unambiguous is a question of law,"[63] and "[l]anguage from a contract need not be perfectly clear for an interpretation of it to be the only reasonable one."[64]

Plaintiff raises two contentions about the proper interpretation of the policy. First, Plaintiff contends that the policy's separate definition of "water damage" as damage caused by "flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body water, or spray from any of these" means that only damage caused by "disturbance of existing water" like "a pond or lake" constitutes "water damage."[65] Second, even if the policy would otherwise bar his claims, Plaintiff contends that the sump pump endorsement "specifically added back into the general policy[] coverage for water damage[.]"[66]

The relevant provisions of the insurance policy are unambiguous and require the Court to reject Plaintiff's contentions. For the reasons that follow, the only reasonable interpretation of the policy's language is that it does not cover damage like that alleged in the Amended Complaint. As such, there is no reasonably conceivable set of facts pursuant to which Plaintiff may recover under the policy, and this claim must be dismissed under Superior Court Civil Rule 12(b)(6).

First, the water damage to Plaintiff's basement was caused by surface water created by weather conditions and was thus clearly excluded from coverage. Since

---

[61] *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 288 (Del. 2001) (citations omitted).
[62] *Id.* (citation omitted).
[63] *Origis USA LLC v. Great Am. Ins. Co.*, -- A.3d --, 2025 WL 2055767, at *11 (Del. July 23, 2025) (en banc) (quoting *BitGo Holdings, Inc. v. Galaxy Digital Holdings, Ltd.*, 319 A.3d 310, 322 (Del. 2024)).
[64] *Id.* (quoting *Thompson Street Cap. Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, -- A.3d --, 2025 WL 1213667, at *8 (Del. Apr. 28, 2025)).
[65] Pl.'s Answer to USAA Mot. to Dismiss 2 (D.I. 58).
[66] Am. Compl. 10–11 (D.I. 48).

the damage to Plaintiff's basement was caused by "surface water," it was "water damage" under the policy's definition of that phrase. Plaintiff's contrary interpretation is unreasonable because it inappropriately constricts the ordinary meaning of "surface water." As this Court noted in *Brandywine Smyrna, Inc. v. Millenium Builders, LLC*, "[a]s a general matter, it would defy common sense to exclude precipitation falling on a roof from a definition of 'surface water.' Obviously, rain falling on a roof is merely temporarily detoured from its manifestation as surface water."[67] At the very least, by the time it entered Plaintiff's basement, the rainwater falling on Pressley's roof was "surface water" as that phrase is commonly understood.[68] Contrary to Plaintiff's view, surface water need not be overflow from a permanent water feature like a pond or river, but can, as here, be the temporary result of weather conditions. This understanding of the phrase's common usage is confirmed by its use in Delaware caselaw over decades.[69]

Second, the sump pump endorsement has no bearing on the analysis. Plaintiff

---

[67] 2010 WL 1380252, at *2 (Del. Super. Apr. 8, 2010).

[68] In support of his interpretation, Plaintiff cites *Union Street Furniture and Carpet, Inc. v. Peerless Indem. Ins. Co.*, 2012 WL 5519614 (Conn. Super. Oct. 23, 2012). That case is inapposite. *Union Street* concerned water that accumulated on the roof of the insured property and then dripped down the walls, chimney, and skylight. *Id.* at *2. The Connecticut Superior Court rejected the insurer's position that water pooling on a building's roof was "surface water." *Id.* at *4. Here, of course, the water did not pool on Plaintiff's roof, but rather on the surface of his neighbor's land. Even if *Union Street* were factually on point, it would conflict with Delaware case law, which recognizes a more expensive definition of surface water. "In the case of a building erected on land, the roof is to be regarded as an artificial elevation of the earth's surface. When it intercepts the falling rain or snow, it therefore gathers surface waters." *Brandywine*, 2010 WL 1380252, at *2 (quoting *Bringhurst v. O'Donnell*, 124 A. 795, 797 (Del. Ch. 1924)).

[69] *See, e.g.*, *Albright v. Carey*, 1978 WL 8396, at *2 (Del. Ch. July 19, 1978) ("As a result of the runoff from the Carey building, according to testimony . . . the increase in the flow of surface water from the defendant Carey's lot to plaintiffs' lot has been increased [sic] [.]"); *Quereguan v. New Castle Cnty.*, 2009 WL 3389922, at *1 (Del. Ch. Oct. 8, 2009) ("In some areas of the lot, the slope away from the foundation of the house is actually negative, causing surface water to run towards the foundation. Because the ground along Maple Avenue slopes from north to south, surface water from the lots of the Quereguans' neighbors to the north drain [sic] onto the Quereguan property . . . . For all these reasons, the Quereguan lot tends to retain standing surface water during rainy weather, surface water that drains or percolates away very slowly.").

does not allege that his basement was flooded by water that "flow[ed] into the plumbing system" from offsite or "overflow[ed] from a sump pump or sump well[.]" Even construing the endorsement liberally in Plaintiff's favor, it does not cover the losses alleged in the Amended Complaint. Plaintiff's contention that the endorsement "specifically added back . . . coverage for water damage" cuts too broadly. The endorsement eliminated the policy exclusion for water damage from *certain* sources not implicated in this case.

### 3. Plaintiff's Unfair Trade Practices Act claim, which he now attempts to reframe as a breach of contract, is meritless.

Plaintiff's claim to recovery under 18 *Del. C.* § 2304(16) is legally frivolous. As Plaintiff now acknowledges, no private right of action is created by the Delaware Unfair Trade Practices Act.[70] In his response to USAA's motion to dismiss, Plaintiff conceded that the statute does not grant a private right of action, but contended that USAA's alleged violations thereof were relevant to independent common law and breach of contract claims.[71] At oral argument, Plaintiff clarified that his putative common law claim is a violation of the implied duty of good faith and fair dealing.

The core problem with Plaintiff's position is that he did not plead such claims in his Amended Complaint. The Amended Complaint makes only two mentions of "good faith." One is a direct quote from the statute presented as such.[72] In the second, Plaintiff "claims that USAA has committed breach of contract or violated the conditions set forth within 18 Del. C. 2304(16) [sic], in that USAA . . . failed to

---

[70] *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 142 n.79 (Del. 2022); *Yardley v. U.S. Healthcare, Inc.*, 698 A.2d 979, 988 (Del. Super. 1996), *aff'd*, 698 A.2d 1083, 1997 WL 188355 (Del. Apr. 11, 1997) (TABLE).

[71] Pl.'s Answer to USAA Mot. to Dismiss 3 (D.I. 58) ("While it is true that a 'private right of action' is not provided under this statute, it is still relevant upon the issue of common law and damages. Plaintiff included the language of this statute to put USAA on notice that, when Plaintiff obtains a favorable ruling upon the Breach of Contract claim, Plaintiff will be seeking both compensatory and punitive damages against USAA.").

[72] Am. Compl. 9 (D.I. 48).

attempt in good faith to effectuate a prompt, fair and equitable settlement of claim in which liability has become reasonably clear."[73] This is also statutory language, and presented in a list of conclusory allegations that USAA violated each subsection of the statute.

The mere inclusion of the phrases "good faith" and "breach of contract" did not place USAA on adequate notice that Plaintiff was asserting, or would later assert, a common law claim. Plaintiff cannot now bootstrap his statutory claim by attempting to reframe it as a breach of the implied duty of good faith and fair dealing.[74] "A *post hoc* attempt to clarify allegations in a complaint in response to a motion to dismiss 'cannot be received as a supplement or amendment to the pleading itself.'"[75]

## III. CONCLUSION

For the foregoing reasons, Pressley's motion to dismiss is **DENIED**; Pressley's motion to strike is **DENIED**; and USAA's motion to dismiss is **GRANTED.**

Plaintiff will be allowed **60 DAYS FROM THE DATE OF THIS ORDER** to serve the Amended Complaint and process upon Pressley in a manner prescribed by Superior Court Civil Rules 3(c) and 4.

---

[73] *Id.* at 11.

[74] *See Peterson v. 21st Century Centennial Ins. Co.*, 2015 WL 4154070, at *3 (Del. Super. July 9, 2015) ("[Plaintiff] is essentially attempting to argue that an implied duty claim can stand, in part, dependent upon § 2304(16), despite the statute not supporting a private cause of action. In other words, by relying on § 2304(16), [Plaintiff] is attempting to circumvent the jurisprudence and establish a claim where one would otherwise be prohibited. Thus, [Plaintiff's] claim . . . is without merit as a matter of law, and cannot survive the requirements of Rule 12(b)(6)").

[75] *Murray v. Mason*, 244 A.3d 187, 193 (Del. Super. 2020), *modified* (Jan. 5, 2021) (quoting *Akrout v. Jarkoy*, 2018 WL 3361401, at *3 n.23 (Del. Ch. July 10, 2018)).

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

oc:     Prothonotary

cc:     Joseph M. Walls, *pro se* (*via U.S. Mail*)
        Counsel of Record (*via File & ServeXpress*)

17